# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 50035 | **DATE** | 10/25/2011 |
| **CASE TITLE** | Sean Gschwind vs. Linda Heiden, et al. | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, the court grants summary judgment as to all defendants and dismisses this cause in its entirety.

*Philip G. Reinhard*

■[ For further details see text below.]

Notices mailed by Judicial staff.

---

## STATEMENT - OPINION

Plaintiff, Sean Gschwind, a non-tenured teacher, filed <u>pro se</u> an amended complaint against defendants, Linda Heiden, the former principal at Harvard Junior High School (junior high), Frank Shields, the assistant principal at the junior high, and the Board of Education of Harvard Community Unit School District 50 (Board). The amended complaint alleges a claim for a violation of his free speech rights under the First Amendment based on defendants taking retaliatory action against plaintiff (in the form of telling him his contract would not be renewed) in response to his having signed a disorderly conduct complaint about a student with the local police. All defendants have moved for summary judgment, asserting that plaintiff's signing of the complaint did not constitute protected speech, that Heiden and Shields are qualifiedly immune, and that there was no policy, custom, or practice of the Board that resulted in a denial of plaintiff's First Amendment rights. Plaintiff has responded, and defendants have filed a reply.

<u>Background</u>

This case arose out of an assignment in plaintiff's sixth grade mathematics class at the junior high. On December 21, 2005, a student in the class who was about 12-13 years old sang the following song in class as part of his assignment: "Woke up quick at about noon I stab Gschwind and he flew like a balloon I got to get up cause to day began I have to my home work and get it done. I am gonna do my home work here I go I'm gonna do my fractions and so so so."

Plaintiff considered the reference to his being stabbed as a threat to his safety and reported it to Heiden and Shields that day after school. He also told them during that meeting that he was considering reporting the incident to the police because he was concerned for his safety.

The next day plaintiff met with the school liaison police officer and Heiden. Plaintiff told the officer that he feared for his safety and asked if he should arm himself. After the officer explained why the song did not constitute an assault or battery, but was possibly disorderly conduct, plaintiff stated he desired to make a complaint for disorderly conduct.

On January 5, 2006, plaintiff again met with Heiden and Shields. Heiden advised plaintiff that she

and the officer had met with the student's parents earlier that day and that in her opinion the parents knew more about the law than she or Shields and that the parents would attempt to dig up dirt on plaintiff if he were to pursue a disorderly conduct complaint. During the meeting, Shields stated that the student said he would behave, that plaintiff did not need to file the complaint, and that Shields did not want problems with the student's family.

On January 10, 2006, plaintiff signed a disorderly conduct complaint. The student was subsequently charged as a juvenile.

On January 11, 2006, plaintiff met with Shields regarding his previous classroom performance evaluation which had a rating of unsatisfactory. Plaintiff did not express any belief to Shields at that time, or later when he submitted a written response to the evaluation, that the unsatisfactory rating was based on his having signed the complaint.

On March 8, 2006, plaintiff met with Heiden. At that time, he received her evaluation of his teaching performance which was also unsatisfactory. During another meeting with Heiden and Shields later that day, Heiden advised plaintiff that she and Shields had concluded that plaintiff's employment should not continue beyond the end of the 2005-2006 school year. Heiden suggested that if plaintiff wanted to remain in education it would be in his best interest to resign as opposed to being dismissed.

On March 16, 2006, after unsuccessfully attempting to get the superintendent to intervene in the matter, plaintiff submitted his resignation. Plaintiff's resignation was subsequently accepted by the Board.

Analysis

In considering a motion for summary judgment, a court must consider the evidence in the light most favorable to the non-moving party. Gross v. Town of Cicero, Illinois, 619 F. 3d 697, 703 (7th Cir. 2010). Summary judgment is appropriate when the evidence demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Gross, 619 F. 3d at 703.

A public employee does not check his First Amendment rights at the workplace door. Gross, 619 F. 3d at 703. A public employee has a right, in certain circumstances, to speak as a citizen addressing matters of public concern. Gross, 619 F. 3d at 703. Thus, the First Amendment prohibits the government from retaliating against its employees for engaging in protected speech. Gross, 619 F. 3d at 703-04.

But a public employee's free speech rights are not unfettered. Gross, 619 F. 3d at 704. A claim for First Amendment retaliation involves a three-step inquiry: (1) whether the speech is constitutionally protected; (2) whether the protected speech was the but-for cause of the employer's action; and (3) whether the employee suffered a deprivation as a result of the employer's action. Gross, 619 F. 3d at 704.

The first question, whether the speech is protected, is one of law for the court. Gross, 619 F. 3d at 704. That inquiry boils down to whether the employee spoke in the capacity of a private citizen and on a matter of public concern. Gross, 619 F. 3d at 704. Purely personal grievances do not qualify as matters of public concern. Gross, 619 F. 3d at 704. On the other hand, the fact that an employee has a personal stake in the subject matter of the speech does not necessarily remove the speech from the scope of public concern. Gross, 619 F. 3d at 704. The court must look at the content, form, and context of the speech, with content being most important, to determine if the employee sought to raise an issue of public concern or further only some private interest. Gross, 619 F. 3d at 704.

In this case, the undisputed facts overwhelmingly demonstrate that plaintiff signed the complaint[1] purely as a matter of private interest. While he makes a concerted effort after the fact to characterize the signing of the complaint as a matter of public concern, it is evident that at the time he did so as a perceived victim of a crime and out of concern for his own personal safety.

This is bolstered when the three factors of content, form, and context are evaluated. Clearly, the content of the speech as embodied in the complaint was limited to a crime directed at plaintiff alone. Additionally, the form of the speech, a juvenile complaint, indicates that the subject matter was focused on an offense involving as its sole victim the plaintiff. Finally, the overall context in which the speech was made

was a situation involving a student who engaged in conduct directed solely at plaintiff, and perceived by plaintiff to be a criminal act against him.  Considering all of these factors, especially the content of the speech, the court concludes that the speech at issue involved a matter of purely private interest.  Accordingly, the speech was not protected, plaintiff has failed to satisfy the threshold requirement for his claim, and there can be no First Amendment retaliation by defendants.  Therefore, all defendants are entitled to summary judgment on that basis.[2]

For the foregoing reasons, the court grants summary judgment as to all three defendants and dismisses this cause in its entirety.

1. Plaintiff relies solely on the signing of the complaint as the operative speech for purposes of his claim.  While it may be arguable as to whether it is in fact "speech" in the context of the First Amendment, defendants do not argue otherwise and the court will consider it as such.

2. Because plaintiff has not established a violation of a constitutional right as a matter of law, both Heiden and Shields would also be entitled to qualified immunity without the need to decide whether the right at issue was clearly established.  See Atkins v. City of Chicago, 631 F. 3d 823, 838 (7th Cir. 2011).  Nor is it necessary to reach the issue of whether there was a sufficient policy or custom upon which to hold the Board liable.